FLOYD, Circuit Judge,
concurring in part and dissenting in part:
I agree with all of the majority opinion except for its conclusion that Dr. Sutton reported a potential claim' as defined by the MedPro policy. I therefore dissent from part II.A. of the majority opinion.
■ I.
This appeal turns on whether Dr. Sutton “reported” a “potential claim” to MedPro during the term of her policy — a condition precedent to coverage. J.A. 592. The policy defines a potential claim as “an incident which the Insured reasonably believes will result in a claim for damages.” J.A. 593 (emphasis added). Both below and here on appeal, Dr. Sutton has consistently denied believing that she ever reported such a claim. Because South Carolina law requires strict compliance with conditions precedent, her admission would seem to end the matter. But the majority concludes her subjective belief is irrelevant, and instead misconstrues the policy as imposing a solely objective test.
I disagree for two reasons. First, the plain language of the policy requires a subjective/objective hybrid analysis. And second, even assuming that a purely objective standard applies, the record is devoid of any evidence or factual findings supporting the majority’s conclusion that a reasonable physician in Dr. Sutton’s shoes would have viewed the medical records request as a first step to a medical malpractice action. Accordingly, I would reverse.
II.
As my friends in the majority correctly recognize, South Carolina law requires that we enforce insurance contracts according to their plain terms. Maj. Op. at 281-82 (citing Bell v. Progressive Direct Ins. Co., 407 S.C. 565, 757 S.E.2d 399 (2014)). Here, MedPro’s policy defines a “potential claim” as “an incident which the Insured reasonably believes will result in a claim for damages.” J.A. 593. By focusing on the Insured’s reasonable' belief, this language requires a mixed subjective/objective analysis. First, did the Insured believe the relevant incident would result in a claim for damages? If the answer to that question is yes, we turn to the second question: is that belief reasonable? Here, Dr. Sutton denies believing that the records request would lead to a claim for damages. Accordingly, we never get past the first step.[1] As such, I would hold that Dr. Sutton failed to comply with the notice requirements in the MedPro policy, and so MedPro does not owe her any coverage.
Courts that have interpreted similar insurance policy language repeatedly apply a similar two-step subjective/objective inquiry. See Owatonna Clinic-Mayo Health Sys. v. Med. Protective Co. of Fort Wayne, Ind., No. CIV. 08-417DSDJJK, 2009 WL 2215002, at *5 (D.Minn. July 22, 2009), as amended (Aug. 10, 2009), aff'd in part, 639 F.3d 806 (8th Cir.2011) (holding that a MedPro policy conditioning coverage on receipt of notice of an incident which the insured “reasonably believes allegations of liability may result” requires both “an objective and subjective” analysis); Darwin Nat’l Assurance Co. v. Matthews & Megna LLC, 36 F.Supp.3d 636, 653-54 (D.S.C.2014) (applying a hybrid subjective/objective standard in analyzing *294 so-called “prior knowledge” provisions in insurance contracts, which exclude coverage for unreported incidents predating the policy period which the insured knew or should reasonably have known would give rise to a claim); Greenwich Ins. Co. v. Garrell, No. 4:11-CV-02743-RBH, 2013 WL 869602, at *7 (D.S.C. Mar. 7, 2013) (citing Selko v. Home Ins. Co., 139 F.3d 146, 152 (3rd Cir.1998)) (same).[2]
Yet the majority concludes the MedPro policy calls for an “objective, not subjective, standard.” Maj. Op. at 283. According to the majority, the “proper inquiry” is “whether a reasonable person in Dr. Sutton’s shoes” would have believed that the medical records request “described an incident that would result in a claim for damages.” Maj. Op. 283. But that is not what the policy says. Rather, the policy plainly states that Dr. Sutton’s reasonable belief controls. Simply put, the majority is not free to rewrite the definition of a “potential claim” by swapping the phrase “what a reasonable person in Dr. Sutton’s shoes believes” for the phrase “what the Insured reasonably believes.” See, e.g., Torrington Co. v. Aetna Cas. & Sur. Co., 264 S.C. 636, 216 S.E.2d 547, 550 (1975) (“[Pjarties have a right to make them own contract and it is not the function of this Court to rewrite it or torture the meaning of a policy to extend coverage never intended by the parties.”).
The majority only musters two cases purportedly supporting its conclusion that the phrase “reasonably believes” means an objective analysis applies: In re Anonymous Member of the South Carolina Bar, 315 S.C. 141, 432 S.E.2d 467 (1993), and Hook v. Rothstein, 281 S.C. 541, 316 S.E.2d 690 (Ct.App.1984). In my view, both are inapposite. Neither addresses contract law, much less language in insurance policies similar to the language at issue here. And both are distinguishable on their facts.
In In re Anonymous Member of the South Carolina Bar, the court addressed Rule 1.7 of the South Carolina Rules of Professional Conduct. That Rule states that “a lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless the lawyer reasonably believes the representation will not adversely affect the relationship with the other client.” 432 S.E.2d at 468. The court concluded this Rule sets up an objective standard. But the court did not do so, as the majority implies, because the phrase “reasonably believes” per se requires an objective analysis. Rather, it did so only because the comment to that Rule expressly states that conflicts governed by the Rule are to be measured under the view of a “disinterested lawyer.” See id. In contrast, nothing in the MedPro policy states that a potential claim should be measured under the view of a “disinterested insured” — rather, the policy is clear that the view of “the Insured,” Dr. Sutton, controls.
Hook v. Rothstein is similarly inappo-site. That case establishes that whether a physician departed from a standard of reasonable medical care in a lack-of-informed-consent action is evaluated under the same objective standard applicable to medical malpractice actions. 316 S.E.2d at 703. Standards for medical malpractice and lack-of-informed-consent actions have no bearing on the meaning of a “potential *295 claim” as expressly defined in MedPro’s policy.
Admittedly, South Carolina courts have yet to interpret identical contractual language in a published opinion. Contrary to the majority’s assertion, however, I do not believe they would apply a purely objective standard. The plain language of the policy states that Dr. Sutton’s reasonable belief controls — not, as the majority concludes, the belief of “a reasonable person in Dr. Sutton’s shoes.” Because South Carolina courts enforce insurance contracts according to their plain terms, Bell, 757 S.E.2d at 406, I am confident they would join courts in other jurisdictions considering similar language and apply a two-part subjective/objective analysis.
The district court also appeared to recognize that the two-step inquiry applies in some instances. In fact, it applied an analogous inquiry in analyzing FirstPro’s claim that Exclusion 11(a) in its policy precluded coverage. J.A. 116. That exclusion states that FirstPro will not defend or pay for any injury or damages arising out of claims made before the effective date if Dr. Sutton “knew or could have reasonably foreseen from the facts, reasonable inferences or circumstances that a claim might be made.” J.A. 647. As the district court acknowledged, this language contains “both a subjective and objective element.” J.A. 116.
Yet the district court concluded that Dr. Sutton’s subjective belief was entirely irrelevant under the similar language in MedPro’s policy, i.e. whether she “reasonably believe[d]” that an, incident would “result in a claim for damages”:
Well, she might not have a reasonable belief of a lawsuit, I understand your argument there, but the purpose of the notice provision is to protect, to bring it to your attention so you can do the investigation during the policy period. And now you want to turn it into some, Oh, no, if there is not a subjective belief by the insured that she’s going to get sued, then we don’t have to do it. I’m sorry.
J.A. 108. In doing so, the court — like the majority — ignored the plain language of MedPro’s policy and instead rewrote it to reflect its purported “purpose.” Because courts “must enforce, not write contracts of insurance,” Bell, 757 S.E.2d at 406 (quotation omitted), the district court erred as a matter of law. Accordingly, I would reverse.
III.
Even assuming an objective standard applies as the majority contends, nothing suggests that this standard was satisfied here. As an initial matter, the district court never applied an objective standard. Rather, it concluded that the notice provision was satisfied because MedPro — not Dr. Sutton — would have considered the medical records request to be a “potential claim.” J.A. 102-10, 136, 390.[3] In doing so, the district court rewrote the policy’s definition of a “potential claim” to read “an incident which MedPro reasonably believes will result in a claim for damages.” Again, the court was not free to rewrite the policy in this way. See Hutchinson v. Liberty Life Ins. Co., 404 S.C. 20, 743 S.E.2d 827, 829 (S.C.2013) (stating that courts can interpret, but not rewrite, provisions in insurance policies).
*296 The district court relied on Owatonna Clinic-Mayo Health Sys. v. Medical Protective Co., 639 F.3d 806 (8th Cir.2011) for this point. See J.A. 136. But that case is inapposite. In Owatonna, the district court held that a MedPro policy with similar notice language required a subjective-objective analysis. 2009 WL 2215002, at *5. The district court granted summary judgment as to the objective component, and held a trial on the subjective component. Id.; see also 714 F.Supp.2d 966, 967 (D.Minn.2010). MedPro appealed only the district court’s ruling on the objective component, but did not appeal the jury’s findings as to the subjective component.[4]
The Eighth Circuit rejected MedPro’s assertions, concluding that the insured’s belief that it would be sued was objectively reasonable. 639 F.3d at 813. At a minimum then, Owatonna establishes that the district court should have applied an objective analysis here (which it failed to do). And the Eighth Circuit only declined to address the subjective component because MedPro did not raise that issue on appeal.[5] As such, Owatonna does not support the district court’s decision to ignore the subjective inquiry required by the plain language of the MedPro policy (and indeed the objective inquiry as well).
Finally, there is little, if any, evidence in the record that a reasonable physician would have believed that the medical records request would result in a claim for damages. In fact, the district court’s findings in the related context of FirstPro’s Exclusion 11(a) suggest just the opposite: that a reasonable physician would not have believed the request would result in a claim. For example, in denying FirstPro’s motion for summary judgment, the district court found that the “record evidence suggests that a reasonable physician would not view a request for records by an attorney as a definite sign of an impending claim.” J.A. 139. And at trial, the court denied Dr. Sutton’s motion for a directed verdict as to this Exclusion, finding that additional evidence was needed as to whether Dr. Sutton’s belief was objectively reasonable. J.A. 260-62. Ultimately, the court determined a different exclusion applied as to FirstPro, and thus never decided whether Dr. Sutton’s belief was objectively reasonable under Exclusion 11(a). The court’s comments, however, suggest that this was a much closer issue than the majority suggests. See, e.g., J.A. 363 (inquiring why there, was “no evidence [as to] what a reasonable physician would have” believed).
Moreover, unrebutted testimony established that requests for medical records typically do not give rise to medical malpractice claims, but rather arise in other contexts, such as worker’s compensation claims or personal injury lawsuits. J.A. 104; 208-09. Thus, as I read the record, equally strong evidence exists that a reasonable physician would not have viewed *297 the medical records request as a first step to a medical malpractice action. In any event, the district court never undertook this fact-intensive inquiry. Accordingly, assuming an objective standard applies as the majority contends, I would remand to the district court to decide whether Dr. Sutton’s belief was objectively reasonable in the first instance.
IV.
For the above reasons, I respectfully dissent from Part 11(a) of the majority opinion.

. The word ."reasonably” modifies the phrase "believes will result in a claim for damages.” Because Dr. Sutton never had any such belief we need not consider whether her non-existent belief is reasonable.

. Cf. Am. Cont’l Ins. Co. v. PHICO Ins. Co., 132 N.C.App. 430, 512 S.E.2d 490, 493 (1999) (“The policy sets up a subjective standard ... under which a claim is deemed filed if the insured reasonably believes that an express demand for damages will be forthcoming. Therefore, we must view Ms. Chapman's actions to determine whether she ... had a reasonable belief that a suit would be filed in the Watson case.”).

. Similarly, the court concluded that after Dr. Sutton reported the medical records request to MedPro, MedPro was then responsible for investigating whether the request amounted to a potential claim triggering coverage, regardless of Dr. Sutton's subjective belief that it would not lead to a claim. J.A. 136.

. MedPro also made an additional argument on appeal: that the insured’s notice failed to literally comply with the requirements of the notice provision because it did not include any names, addresses, or other details required by the policy. 639 F.3d at 811-13. The Eighth Circuit disagreed, concluding that the insured's notice provided sufficient facts to put MedPro on notice of a claim under Minnesota law. Id. at 812-13. The district court here appears to have relied on this portion of the Eighth Circuit’s analysis (see J.A. 136), while overlooking the portion of the Eighth Circuit's opinion analyzing whether the insured’s belief that a claim would be filed was objectively reasonable.

. 639 F.3d at 810-11 ("In our case ... the only issue on which there was a trial was the matter of the [Insured's] subjective belief, as to which there was no doubt as to the sufficiency of the evidence, and as to which, more relevantly, there is no issue raised on appeal.”).